We'll hear the next case on the calendar, Scarpa. May it please the Court. My name is Amy Busa and I represent the United States on this appeal. Gregory Scarpa, Jr. has engaged in a long-standing pattern of perjury, deception, and attempted fraud upon the Court. From his perjury in his 1998 criminal trial, the provision of what the government believed in good faith was his sham cooperation in the Ramsey-Yusuf matter, and through his provision of false affidavits and testimony found to be incredible by a judge in the Eastern District of New York in support of 2255 applications on behalf of fellow members of the Colombo crime family. Based on this considerable history, the government declined to make a Rule 35 motion on his behalf just over one year after the provision of that incredible testimony. Refusing to make a Rule 35 motion for somebody with this record, even if he offers information that's useful, is within the government's discretion. In rejecting the government's refusal, the District Court erred both legally and factually. The District Court erred legally in holding that Wade let it grant relief if the Court, based on its own balancing, concluded that the government had not made a rational balancing of the costs and the benefits. In your brief, you argue that what the District Court did was its own balancing. But I'm not sure that's right, and I'm hoping you could help me out. It seemed to me, reading the District Court's opinion, that the District Court considered the government's reasons and determined that they were either unsubstantiated by the record or not credible, which seems to me it would be a different thing. Well, to me, that seems like the District Judge, first of all, is digging under the government's reason, but I don't believe that that's the test. We submit that's not the test under Wade. Under Wade, if the government offers what is a permissible reason, which the government did here, it offered actually several permissible reasons, that the District Judge then can't go under those reasons and do its own balancing in this circumstance. It can't second-guess. And so the permissible reasons that the government... So once the government states a credible reason, the District Court's authority is at an end? I think in Wade, because this is a... I understand that that may feel dissatisfying, but because this is a case where there was no cooperation agreement to limit the government's discretion in this matter and because under separation of powers principles, as Wade recognized, that this is something quite analogous to a charging decision, that this is something that is exclusively within the executive's realm, and it can only be narrowly reviewed if the government is doing it for a clearly impermissible reason like race or religion or something where there's just absolutely no rational relationship. But didn't the government... Didn't the court apply that standard rationally related to any legitimate government? And it did use... It did use those words. It did use those words. It did use those words, but the government's position is in so doing, what the court did was decide what it believed were the true facts, what it believed were the true version of events, for example, resolving any conflicts between Agent Stern's affidavit and Gregory Scarpa's 2013 affidavit. Well, let's... In February 2012, right, at the hearing before Judge Corman, the government stated that Scarpa, and I quote, took false credit, right, for the information about the Nichols explosive because another person had provided that information to government officials. That's the quote. Am I correct in concluding that you no longer believe that Scarpa took false credit? What we believe is that, and this is sort of the convoluted way it ended up getting to the government. I remember this isn't something that they came directly to the United States Attorney's Office to say, Mr. Scarpa has this information. Things were put in motion by various people, both Mr. Scarpa himself and others, who were acting on his behalf. So the information gets to a place where the FBI ultimately acts on it because of Dr. Dresch advocating with members of Congress and pushing and pushing. But... The government now concedes, I think, from the letter of August 15, 2014, that the origin of the information was Scarpa. Yes. The origin of the information that the explosives were in Nichols' home was from Scarpa. But here's some critical things that I think come into play. First, it's from everyone who submitted on both sides, both the defense and the government. Scarpa never told Agent Stern or the other FBI agent who interviewed him where the explosives were. Now, there may be disputes as to why that is. Dr. Dresch and Angela Clemente say that Scarpa insisted on having a cooperation agreement before he would give that information. Agent Stern says that Scarpa wanted an official-looking document, and also he wanted a cooperation agreement. And Scarpa says, look, at some point he says, look, at that time I didn't have the full information. But regardless, he didn't give that full information. And the question is, from the government's perspective at the time, when they're evaluating all of this, what do they believe? And in addition, in the November 2012 oral argument, a different government attorney made reference to there being several inmates who actually had legitimate safety concerns, who had indicated to the FBI in their further investigation that Scarpa was purposely fabricating some of what he told the FBI. So this appeared to be, in the government's view, part of the pattern that we saw with Ramsey Youssef, where some information that was useful was conveyed, but that there was an embellishment and there was a fabrication of stuff to make it more tantalizing, for example. So again, when the question is underweighed, looking from the government's perspective, as opposed to what would this be in a trial with proof beyond a reasonable doubt, the government submits that even though we now understand and we appreciate that Mr. Scarpa ultimately did provide the information, it's just not enough, especially in light of his egregious record. And also, I think one of the things... So does false credit refer to an allegation that he embellished or that he took credit that might have belonged to other people that were trying to get the information out? You know, I don't know... Or is the government now saying we just don't... I believe that what the government is relying on now is still that there is purposeful fabrication as to some, but we do give credit to Mr. Scarpa that he did ultimately, through intermediaries, provide the location of explosives. So is that... Are you now saying that Scarpa did provide substantial assistance? Well, again, underweighed, that isn't enough. He has to show that, plus that we withheld the Rule 35 motion based on an impermissible reason. And I think in this case, it's hard to say, because if you take Scarpa at his word, for example, if you look at the notes that he made at the time that he was supposedly getting the information from Nichols, Scarpa is saying, Look, Nichols is telling me that his brother, James, was involved in the Oklahoma City bombing. He was arrested but not prosecuted. James knows where the explosives are. There is an imminent plot to have a bomb go off on the 10th anniversary, things of that nature, right? So from the government's perspective, substantial assistance isn't just getting the explosives. It's getting James. And Scarpa is in no way in a position to credibly testify against anyone in light of the record that I referred to. And most importantly, if we look at what the agent said in 2012, we're not looking at what was said in 2005, and that's when the decision was made. I think the best evidence of that is the e-mail in 2005 from Neal Sheffman, who at the time represented Mr. Scarpa, to Angela Clementi, which is one of the people working on Mr. Scarpa's behalf, saying, I've just talked to the supervisor in the U.S. Attorney's Office in the Eastern District, who is in charge of reviewing whether to make Rule 35, and he says they're not making it. And most importantly, the conclusion of why they're not making it is because of his past history. The government has consistently relied on the past history, and with all respect, about the years of litigation, I think things get lost in the weeds. But that's been consistent from that 2005 e-mail. Neal Sheffman's 2009 affidavit also relays that. The government's, I think, most fulsome response was the April 28, 2010 letter in response to Mr. Scarpa's request for Rule 35, and in that the government relied extensively on Mr. Scarpa's history and also the need to protect the integrity of the cooperation process. If the district court is skeptical about the government's position because false credit explanation in the district court's view no longer holds water, doesn't it make some sense for it to be skeptical overall? I would submit in this case that what the district judge should have done is look at everything in the record. Again, there is a presumption of regularity here, and I think in some of the cases that we cited, like DeFeo and a few of the others, you'll see in a pattern the government will give five or six reasons for why it's inclined to move. And the district judge may have rejected reason one or reason six or reason three, but ultimately there's some core reasoning that still holds. And I don't think anyone can possibly dispute Scarpa's record or that the government has an interest in making sure somebody with that record receives adequate punishment, that there's finality in the judgment, that we're upholding the jury's verdict, that there's closure to the murder victim's families. And remember, he conspired to murder several people, all of one except for one who died. So these are reasons that the government had that are valid regardless of what Agent Stearns may have said or not said seven years later. I see that my time is running over, so for all the reasons that I've stated here and in our briefs, I ask that this court reverse the district court's order, vacate the Second Amendment judgment, and reinstate the First Amendment judgment. Thank you. Good morning, Your Honors. I'm Georgia Hind, and I represent Defendant Gregory Scarpa, Jr., to whom Judge Corman granted a ten-year sentencing reduction pursuant to Rule 35B based on his substantial assistance in obtaining and disclosing the location of these hidden explosive components that posed a serious danger to public safety. Judge Corman's decision should be affirmed because it appropriately recognized under the judicial powers of review identified in Wade v. United States that the government's refusal to credit Mr. Scarpa's significant and unusual contribution was not rationally related to what the district court rightly described as the government's, quote, indisputably compelling interest in discovering and neutralizing stores of bombs hidden by domestic terrorists on American soil. Moreover, the district court only reached this conclusion after long and careful consideration of what it found to have been the government's largely implausible, contradictory, and factually unsupported excuses for refusing to support any sentencing reduction for Mr. Scarpa's substantial assistance, the value of which was verified as accurate the moment the authorities found and safely removed explosive components from the exact location the defendant provided. Help me out because it's difficult to see how you can say that the government's refusal to follow a substantial assistance motion here is not rationally related to a legitimate government end, at least the government articulated a legitimate government end, so they said they pointed to several, Mr. Scarpa's record, the severity of the crimes, a whole list of them, and it is not the district court's job to weigh these against the policies that you've articulated. So how did the district court conclude on what basis that the government did not articulate a reason that's rationally related to a legitimate end? Well, primarily in this situation, Your Honor, I mean, first of all, this is not your standard making cases kind of cooperation to which there's more deference owed to the government in a typical case. The government in those kind of cases, as with charging decisions or whether to bring charges at all, is more likely to have superior expertise in weighing the value of cooperation and whether or not it was helpful to a particular situation. This is a situation that the district court, on its face, it had intrinsic value the moment the U.S. Attorney's Office heard about it because the explosive components had already been located in the same location Mr. Scarpa provided. Can I just say, you could flip that exactly on its end. You could say in a situation where a defendant has a cooperation agreement, the judicial function may be greater because you have to make sure that the government honors its commitments. But in the situation where there is no cooperation agreement, substantial assistance alone is not enough of a reason for the district court to be empowered to weigh how great that assistance is and what it merits. I agree with that, again, in the context of making cases more than in the context of protecting public safety with verified information. What we had here in this situation, I mean, in the case of a cooperation agreement before the fact, certainly a district court has an additional level of scrutiny that it must perform to see if there are any particular commitments in the cooperation agreement that the government did or did not fulfill. That's separate and apart from whether or not the government is proffering in a situation where it refuses to bring a motion for sentencing relief based on verified information. If it's proffering information that is, in fact, unacceptably arbitrary, incorrect, unverifiable, sloppy . . . I mean, the district court found a lot of problems with the proffered information or proffered grounds for the government's refusal to bring this motion apart from the history of the defendant. The problem with the history of the defendant is, certainly he has a serious history. He has serious convictions. He served, to date, 29 years for those serious convictions, and even with the district court's reduction of 10 years, he'll still serve another decade hoping that he survives it to be able to see the outside of the prison walls again. But the history is a long time ago, and the government drew its impressions about Mr. Scarpa from 1988 through, I guess, 2004. And from that point on, he's been doing some things that are really kind of remarkable for an inmate, originally in maximum security federal custody and now in a state facility where the state officials have found him to be an extraordinarily model prisoner. He has helped out . . . So you're suggesting that the government should have considered his conduct in jail in prison after he provided this assistance? Your Honor, the government was asked by Judge Corman numerous times, I think most recently at our last telephone conference, which I think was in December of 2015, whether it had changed its view of whether Mr. Scarpa, in fact, did in fact warrant the sentencing reduction that the court announced at that conference was inclined to give. And it's not just in 2005, but it's his whole history of showing that the government's impressions about any false information or false credit or whether it was a search warrant and it wasn't a search warrant, there was a lot of misinformation that was being funneled through the government to the district court as reasons. And if this were a Batson case, and the government gave this kind of reasoning that turned out to be completely unsupportable as a basis for excluding a juror, a court would be properly motivated to say, no, that's not a good enough reason, you have to find something better or I'm going to rule against you or the defendant gets a new jury. The same kind of situation is here when you're talking about verifiable public safety information that has already done its good deed for the public and the defendant had a hand in it that the government eventually admitted and there's no reason to doubt that he had a hand in it based on the last decade of his behavior and the impressions of a congressman, the Bureau of Prisons, his present state facility warden. Let me ask you this. The district court said this is a post-Hawk rationalization by the government. When did Hawk occur? It could have been as far back as the time of Mr. Scarpa's trial. I mean, I'm thinking. It couldn't possibly be later than the time in 2005 when he's seeking this. Oh, understood, Your Honor. I'm thinking. Post-Hawk rationalization. I mean, isn't 2005 the time we should be focusing on in terms of whether the government did something that was irrational? Not only 2005, Your Honor, because to the extent the government made a decision in 2005 based on misinformation and then maintained that position in 2006, 2007, 2008 through 2015, even after acknowledging in certain cases that it was misinformation, for example, that he took false credit or that a search warrant had been used when it hadn't, all of these things added to the irrationalization process here that required the district court to look at this as not rationally related to the bottom line goal, which is protection of the public. Isn't that a balancing operation that the district court's conducting? I mean, the government was concerned about the past history of Mr. Scarpa and giving false information. I understand, Your Honor. And this is causing the government to expend a lot of effort in tracking down things that were false. Understood, Your Honor, but at the point where the government learned of Mr. Scarpa's substantial assistance in 2005, it was already verified. This isn't a case where you had to go back and say, oh, is this false information, and we're on a goose chase. It had already been verified. It had been published. There was no reason to dismiss Mr. Scarpa's assistance other than something not rationally related to public safety. It was simply looking for an excuse. Maybe it was in 2005, and maybe that excuse continued even when all of the factual grounds for the excuse didn't hold up. But at bottom, it wasn't a rational relationship to anything that we should be condoning. You're not denying, are you, that he has a history of deceptive and dishonest cooperation? Your Honor, I don't think. You're saying it's before 2005. I think it was well before. And that everything that happens after that sort of wipes the slate clean. Is that what you're saying? I think what I'm saying, Your Honor, is that it's fine for the government to have misgivings about information that it might present at a trial and have credibility issues, for example, based on a history of past whatever. It's fine for the government to be prudent in deciding what kinds of things to look into and not. It's not fine when you have verified information that was provided by a particular inmate at considerable risk to himself, and that you just dismiss it out of hand without giving them any credit for it. I mean, if there's a reason for not giving credit here, I still don't know what it is. I mean, a rational reason. I don't know what the rational reason for not giving credit is because the information was verified, so the verification is what wipes out the history of deception that the government. Verification does not require the government to make a motion. I mean, Wade is quite clear. Substantial assistance alone is not enough. The government has to decide in its discretion that a motion should be made, and it can decline to make a motion as long as there's a rational reason that it's articulated and it's acting on the basis of a legitimate government end. Your Honor, I think Wade is talking again about the kind of cooperation that the government has its special expertise to provide, and in that kind of context perhaps the fact that a person offers information about another potential defendant is not enough. I don't argue that. What I'm saying is in the particular context here, the district court was in as good if not a better position to evaluate the information because the district court didn't have any irrational stuff going on. It was being objective, as was Congress, as was the BOP, all the other objective observers of this information that have found it credible and have found it helpful. All of those, I mean, basically Wade talks about, you know. Wade says that generalized allegations of improper motive will not entitle a defendant to a remedy. Is there anything here more than generalized allegations of government's improper motive? Well, I think so, Your Honor, because there have turned out to be, well, to the extent somebody in the government, and I don't necessarily accuse my colleagues in the Eastern District because they were relying on information from the FBI, but somebody in the government was providing either sloppy information, misinformation, some kind of information that was not in the public interest. And, yes, I mean, I think generalized information is, it's not just that he gave this information and we think it was something sleazy about the way the government didn't move for him. This is a case where he gave the information. It was verified. The government gave a laundry list of reasons why it didn't think it supported relief, and it turns out most of that laundry list was fictional, and the district court found that. There's no clear error in the district court's factual findings for certain. The only thing that really is left when you boil it all down is that, yeah, Mr. Scarpa has bad history. He has a bad history. He's been in jail 29 years. He's doing a good job that we hope all inmates will do someday. I mean, it doesn't happen very often where you actually rehabilitate yourself. You become somebody better than your circumstances might allow, and that's what the 10-year reduction is being offered here, and it's something that it's a bad message. If somebody does something that's verifiable. Isn't it a bad message to say you can do anything you want that is false and obstructive and so forth as many times as you want, but if you come up with something that's good, all the rest doesn't count? Your Honor, first, I'm not going to make any excuses for Mr. Scarpa's trial testimony. I do have excuses for whatever he submitted in 2255 motions because there was a family safety aspect to that. There is no acknowledgment on the defense part that what he tried to do in 1996 and 1997 under the auspices of the FBI was anything more than him being used as a conduit for somebody else's compromise. Judge Raggi did not find definitely that he was the person who was trying to play with the system. He might have been somebody who passed along compromised information. So this is not somebody who's just out playing. He's out looking to do something for his life and for the life of others, and that's something that, yes, I think it should wipe out quite a bit. It doesn't wipe out much because I say he's still got ten years to go, and he's done 29. So it's a big sentence for somebody who was, in fact, charged with a number of murders and never convicted of any of them. And as defendants this court has, well, part of the panel is familiar with Mr. Scarpa's direct appeal, so I don't have to tell you. He's not the worst guy in the world as defendants you've seen before. So, yes, I think it should. Thank you. Thank you. Thank you. The district court provided three reasons for its conclusion that the government's explanation was a post hoc rationalization, and none of those withstand scrutiny. The district court cited, for example, how the government treated other cooperating witnesses, but none of those were similarly situated to Scarpa. They had cooperation agreements, which put restraints on what the government can do. It limits the government's discretion. And also in those cases with breached cooperation agreements, the government often, and almost always, I would imagine, makes people come in and tell the government proper what they did wrong, so there's a coming clean. Mr. Scarpa has never come clean to the government about the full scope of his crimes. And indeed, the government in 2005, the FBI interviewed other inmates who said that Scarpa was fabricating some of the information that he was giving. So that, in the government's view, is more of the same. As to the embarrassment theory, Mr. Scarpa concedes on appeal that that wasn't necessary for the judge's decision. And that's no more than mere speculation. The US Attorney's Office for the Eastern District of New York is not beholden to the FBI of Kansas or Colorado. We don't work with them. And the most important thing, as I said earlier, is Greg Scarpa never gave the FBI agent who interviewed him the exact location of the explosives. Finally, as to the post hoc rationale, that's contradicted by the contemporaneous evidence in the record, as I mentioned before. Going back to the 2005 email, where Neil Sheckman summarizes his conversation, the AUSA said, we believe that Scarpa's sources are suspect. I believe that refers probably to Dreschen Clementi, who the government had experience with in dealing with the 2255 litigations involving the other Colombo crime family members. And even if Scarpa did provide the information, the Eastern District is not interested based on his past history. It is right there, it is right there, what the true explanation is. So for those reasons, the government, again, asks this court to reverse the district court's order. Thank you. Thank you. Thank you both for your arguments. The court will reserve decision. Final case is on submission. Clerk will adjourn court.